ADAMS v. BOSTON STORE.

(Circuit Court of Appeals, Seventh Circuit.  October 3, 1916.)

No. 2268.

PATENTS ⬚328—INVENTION—JOINT FOR METAL BEDSTEAD.

The Adams patent, No. 923,235, for a joint for metal bedsteads, *held* void for lack of patentable novelty and invention.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by George Adams against the Boston Store.  Decree (216 Fed. 626) for defendant, and complainant appeals.  Affirmed.

The appeal is from a decree of the District Court finding the issues for appellee and dismissing appellant's bill for want of equity.  There is involved claims 1 and 2 of United States patent No. 923,235, to George Adams, June 1, 1909.

Claim 2 is as follows: "A joint for a metal bedstead, or the like, comprising a hollow member provided with a hole or opening, a mold plate, means for securing said mold plate within said hollow member, said mold plate being shaped to form a recess or cavity within said hollow member into which the opening in said hollow member opens, the means for so securing said mold plate in position comprising a screw in screw-threaded engagement with a hole or opening in said mold plate, an end of which is adapted to bear against the inner surface of said hollow member and to draw said mold plate into close engagement with the side thereof around the hole or opening therein, said screw being of such length that it will project into the recess or cavity defined by said mold plate, a part of or projection on the other connected member which extends through the hole or opening in said hollow member into the recess or cavity defined by said mold plate, and an abutment cast within said recess or cavity, with or upon said part of or projection on said second connected member which projects into the cavity or recess defined by said mold plate and also upon the end of the screw for securing the mold plate in position which projects into said recess or cavity, substantially as described."

Claim 1 is the same as claim 2, omitting therefrom, after the words "opening therein," the clause "said screw being of such length that it will project into the recess or cavity defined by said mold plate," and omitting also, just

---

preceding the word "substantially," the clause "and also upon the end of the screw for securing the mold plate in position which projects into said recess or cavity."

The controversy concerns the joining together of the various members of the head and foot ends of metal beds, particularly attaching to the tubular corner post the member to receive and hold the side rails of the bed. Earlier construction showed a "chill" or casting upon the post completely surrounding it. This required considerable metal, adding undesirable weight and expense, and marring the symmetry of the bed. In 1877, Bryett secured a British patent for casting, or "frenching," as it is called the corner member upon the post making an orifice or hole in the post placing next thereto the mold for making the corner piece, and pouring into the mold the molten metal, which, filling the mold, and passing through the orifice into the post, on hardening made a solid casting firmly held to the post by the metal abutment thus cast therein. To avoid filling the entire cavity of the hollow post with liquid metal, plugs were inserted within the post a short distance above and below the orifice, so only that part of the cavity of the post between these plugs was filled with metal. This plugging process was considerably used, and is shown in some of the exhibits in evidence. But filling the entire post cavity between the plugs involved waste of metal and extra expense and weight, and it was deemed advantageous to restrict the cavity to a capacity affording just enough metal to give the necessary holding strength to that part of the completed casting constituting the abutment within the post.

There appears a patent to J. M. Adams, No. 808,501, December 26, 1905, in which is described a corner piece attached to the post by the "frenching" process, and illustrating an abutment within the post, not occupying the entire diameter as in the British patent, but only a comparatively small part thereof, immediately within the orifice. In order to restrict the bulk of the casting within the post, there must be formed a cavity, by means of a mold or receptacle within the post, to receive and hold the metal while it is being poured, and until it becomes hardened. This means is not described in that patent, but in the testimony it appears that in practice a mandrel, with a mold or cup at one end corresponding with the desired shape of the internal abutment, was inserted from the end of the post, and held in position next the orifice or hole in the post, so that this mold or cup, together with the mold for making the external corner piece, constituted one mold or form for making the entire casting. The metal then poured into the mold, within as well as without the post, becoming hard, the mandrel was removed, leaving the abutment within the post as a part of the casting.

A large maker of metal beds, the Art Bedstead Company of Chicago, owned by F. W. Adams, who is a brother and employer of J. M. and George Adams, made use of the process described in J. M. Adams patent, employing the means stated for casting the inner abutment. The Simmons Manufacturing Company of Kenosha, another large manufacturer of metal beds, and who, as makers of the particular beds of which infringement is here claimed, have assumed and conducted the defense of this action, appears also to have employed various means for frenching the corner piece to the post, and for making joints for uniting the tubular members of the bed.

October 20, 1908, patent No. 901,482, was granted to O. Rudd, assignor to Simmons Manufacturing Company, for a joint for metal beds, the mold or cup for casting the inner abutment of which was constituted by a depression in a section of inner metallic lining frictionally held in place within the post or tube, and which remained permanently in its place after the casting was made.

January 8, 1909, application was filed whereon was issued Patent No. 933,355, to J. M. Adams, for a joint for metal bed. He describes a mold plate for the purpose of making the internal casting to constitute the abutment within the post, and specifies "means for rigidly securing said mold plate in position," preferably that in casting the abutment the mold plate becomes a constituent part of the joint, and the specific means he shows for holding the mold plate are clips secured into the mold plate, with the ends bent over the edges of the hole. His first three claims are very similar to those here in issue, but instead of describing the screw as a means for holding the plate in place, he

claims generally means for securing the mold plate in position within the hollow member—other claims describing the holding clips.

January 27, 1909, application was filed for the patent in issue. The internal abutment of the post shown by this patent, after it is cast, is not substantially different from those in the joints shown by the J. M. Adams patents or the Rudd patent. But the distinct feature claimed is that George Adams' mold plate or cup for forming the inner part of the casting, or the abutment on the inside of the post, is held in its place, by a screw, 8', which passes through a threaded hole in the bottom of the mold plate, so that by turning this screw until it impinges on the opposite wall of the post the mold plate is pressed against the side of the post next to the casting, as shown by following Fig. 5 of the patent drawing:

Exclusive rights under the patent were granted to Seng & Co., large makers of and dealers in manufacturers' specialties, who pay a royalty to the patentee on all the mold plates sold, excepting those sold to the Art Bedstead Company. Seng made and sold a great number of them and paid a considerable amount in royalties. Simmons declined to recognize the patent, but made many beds embodying the particular feature claimed for it; i. e. with the mold plate or cup held in position by threaded wire or screw passing through it until its end impinges against the opposite wall of the post or other hollow member.

George C. Waldo, of Chicago, Ill., for appellant.

Albert H. Graves, of Chicago, Ill., for appellee.

Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). If the claims in issue are valid, there has unquestionably been infringement, as charged, in appellee's sale of the beds. In thus permanently attaching the mold plate, it does not actually form part of the joint, but when the casting imbeds the attaching means the mold plate remains as a matter of necessity rather than of choice. Its contribution to the strength of the joint is negligible. George Adams testified:

"The only purpose of the threaded screw or wire of my patented construction is to hold the mold plate in place until the casting is made" (page 37).

And J. M. Adams testified that, where a large post is used, he thinks it preferable to dispense with any mold plate, as the large post gives greater opportunity to use a mandrel, which is a removable mold, and that when using his first patent the cost of the mold plate is saved.

Appellant's counsel say:

"We call attention to the fact that the device of the patent in suit is a joint for metal beds, and not means for securing a mold plate in position in the abstract."

But the cause has been tried and decided upon the theory that the question involved is whether or not George Adams was the first and lawful inventor of the means shown in his patent for holding in place the mold plate for forming the internal abutment for such a frenching

or joint, by means of a screw extending through it and impinging on the opposite wall of the post or tubular member; and we will consider and determine the cause on the same theory.

The defense is anticipation and prior use by the Simmons Company. Evidence was adduced to show that in March, 1906, the Simmons Company made for the Michael Reese Hospital of Chicago several metal beds, part of one of which was brought into court, which showed an inner cast iron mold plate or cup, having two cavities, each opposite a corresponding hole in the post, and a headed screw through the post passing into the mold plate between its two cavities, drawing and holding it in engagement with the post, and a frenching cast upon the post, the liquid metal passing through the two holes and filling the cavities of this mold plate, forming two internal abutments within the post integral with the outer casting. Other Simmons beds were shown, claimed to have been made in 1907, showing single cavity mold plates held by a screw through the post on the casting side into the mold plate. They showed still other beds, which it is claimed they made in the spring of 1908, having joints formed with single cavity cups, with threaded wire extending through them, impinging on the opposite wall of the post, thus holding the mold cups in position for casting in same manner as in the patent in suit. Witness Bayer, long superintendent of the Simmons brass bed department, testified that in the spring of 1908 he devised the mold plate fastening so used in the last-mentioned beds, and that his company has since then used them quite extensively.

Thereupon George and J. M. Adams again testified, carrying back George's invention to January, 1908, which is earlier than the last stated Simmons use. The making and sale in March, 1906, of the Michael Reese beds having the double cavity cast mold cups held by a screw as stated, is well established by the evidence. The use by Simmons in 1907 of the single cavity cup held by a screw through the same side of the post is fairly well shown. But the Simmons use of the cup secured in the manner of the patent, in the spring of 1908, is involved in considerable doubt. The evidence which carries the Adams invention back to January, 1908, appears to be at least as convincing as that which shows this last stated use by Simmons in the spring of 1908.

Much appears in evidence and in argument on the subject of the superiority and advantage of the single over the double cavity mold; but the comparison is made between the unnecessarily heavy, large, and crude cast iron structure of the early Simmons double cavity cup with Seng's later single cup, neatly formed from thin sheet steel. But the superiority of the latter represents only that natural growth, development, and perfection which involves mechanical skill rather than invention.

If, instead of the large heavy casting of the mold plate for the 1906 bed, there had been employed a double cavity plate pressed from sheet steel, and not larger than necessary for casting a sufficient abutment, we would have the Simmons 1906 mold plate; and the employment thereafter of a plate having a single cavity would not patentably distinguish from the other. Indeed, the alleged novelty of the patent is not to be found in the employment of a single cavity mold cup, as distinguished

from a plurality of cavities, nor in fact in employing a mold plate at all. In order to cast within the post an abutment which shall occupy less than the entire diameter of the post, some form of restricting or limiting mold within the post is necessary to prevent the liquid metal from filling the post. The single abutment of the first J. M. Adams patent required and contemplated a single cavity mold in which to cast it. The George Adams application refers to the structure of the J. M. Adams earlier 1909 application, in which there is shown a single cavity mold cup as an essential part of that structure.

And so with respect to the novelty of the patent claimed for the screw passing through the mold plate and impinging against the opposite side of the post, thus holding the plate. George Adams cannot claim generally a mold plate attached to the post and becoming in such sense a part of the abutment through the holding means being imbedded in the frenching or joint when it is cast. The prior J. M. Adams 1909 application claims generally the disclosure of a mold cup attached to the post, and his first three claims allowed are for means generally for securing the mold plate in position within the post. Other claims show this fastening to be metal clips so bent as to hold the plate in position, so that when the casting is made the clips will be imbedded therein. But Simmons showed in 1906 the use of a screw passing through the post and into a screw hole in the plate between the cavities, for drawing and holding the plate in place, and in 1907 showed a similar screw passing through a single cavity mold and likewise drawing and holding it in place. The lengthening of the screw and passing it through the mold plate until it impinges against the opposite side of the post, thus pushing and holding the mold plate, instead of drawing it by a screw whose head engages the post on the side on which the frenching or joint is to be made, is in our judgment accomplishing the same result in substantially the same way. Some slight advantage is pointed out in the employment of the former over the latter method, but this would not alter the conclusion of substantial identity in function and means. We fail to discover the quality of invention in the later as compared with the earlier use of the screw for holding the mold plate to the post.

Neither do we find novelty in the idea of extending the screw forward from the metal plate, so that, when the casting is made, the screw, being imbedded therein, may afford an element of additional strength. The imbedding within a casting of a piece of metal, such as a screw or wire, is not novel in the art, but is found in structures of various kinds. Besides, in the same J. M. Adams prior 1909 application there is shown a similar strengthening screw to be likewise imbedded in the casting, and for a similar purpose as claimed in the patent in issue.

We are of opinion that the District Court did not err in dismissing the bill for want of equity, and its decree is accordingly affirmed.